# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRAVIS THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-12629** |
| **MICHAEL TRAGRE, CHIEF LAW ENFORCEMENT OFFICER, ST. JOHN THE BAPTIST PARISH** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Plaintiff's Motion *In Limine* asking the court to take judicial notice of the jury verdict in <u>Randle v. Tragre</u>, C/A No. 15-395, in the United States District Court for the Eastern District of Louisiana (Doc. #59) is **GRANTED** as unopposed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion *In Limine* asking the court to take judicial notice of motions *in limine* filed by the District Attorney in certain criminal actions in the 40th Judicial District Court, Parish of St. John the Baptist, State of Louisiana (Doc. #62) is **GRANTED** as unopposed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Rule 56(c) Objection (Doc. #68) is **DENIED**.[1]

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #60) is **DENIED**.

---

[1] Plaintiff argues that defendant failed to cite to the record in opposing some of the facts alleged in his "Statement of Uncontested Facts" and as a result, under Rule 56(e)(2) of the Federal Rules of Civil Procedure, this court should consider the facts undisputed for the purposes of plaintiff's motion for summary judgment. Rule 56(e)(2) provides that, if a party fails to properly address another party's assertion of fact, the court *may* consider the fact undisputed for the purposes of the motion. Alternatively, under Rule 56(e)(1), the court *may* give the party an opportunity to properly address the fact, and under Rule 54(e)(4) the court *may* "issue any other appropriate order." The court declines to consider the facts undisputed and finds that it is unnecessary to allow defendant the opportunity to address the facts because there is ample support in the record for all of the material facts pertinent to ruling on the parties cross motions for summary judgment.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #61) is **GRANTED**, and plaintiff's claims against the defendant are **DISMISSED**.

**BACKGROUND**

This matter is before the court on cross motions for summary judgment filed by plaintiff and defendant.

From July 1, 2012, to April 7, 2015, plaintiff, Travis Thomas, who is African American, was employed as a deputy with the St. John the Baptist Parish Sheriff's Office ("SJBPSO") in the narcotics division. Defendant, Michael Tragre, who is also African American, is the Sheriff of St. John the Baptist Parish. In February 2014, Thomas and Hardy Schexnayder, another African American narcotics officer, informed the narcotics division supervisor, Walter Chappel, an African American, that Justin Bordelon, who is white, used excessive force on an African American suspect named Darnell Randle while he was detained.

Captain C.J. Destor, who is a white employee of the SJBPSO, conducted an internal affairs investigation into the matter. Destor interviewed all of the deputies involved and Randle. Thomas told Destor that he saw Bordelon hit Randle in the face with a flashlight. Schexnayder and Detective Jonathan Rivet, who is African American, corroborated Thomas' story. Bordelon told Destor that, while Thomas was trying to get control over Randle, Thomas forced Randle into a door frame, which resulted in a cut on Randle's face. Bordelon also stated that he tried to pry a bag of cocaine out of Randle's mouth by using pressure points and his flashlight as a tool, and at some point he put Randle in a headlock. Randle told Destor that Thomas and Schexnayder, not Bordelon, were the officers that beat him. Polygraph tests determined that Bordelon was truthful and Schexnayder was

2

untruthful. Thomas's polygraph test was inconclusive. Destor recommended exonerating Bordelon, and taking disciplinary action, possibly termination, against Thomas and Schexnayder. After considering all of the evidence, Sheriff Tragre did not find any of the deputies' versions of events to be conclusive because there were multiple conflicting statements. Thus, Sheriff Tragre did not take any disciplinary action against any of the officers at that time.

A year later, Sheriff Tragre was informed by the District Attorney of the 40th Judicial District that the results of the aforementioned internal affairs investigation were being sought or would be sought by criminal defense attorneys in cases where the deputies involved were to serve as witnesses. District Attorney Bridget A. Dinvaut instructed the felony prosecutors to file motions *in limine* in such cases to exclude the internal affairs report, particularly the results of the polygraph tests, from being introduced as evidence. Sheriff Tragre thought the internal affairs report in this matter would be problematic if produced in criminal cases and decided to transfer Thomas and Schexnayder to positions where they would be less likely to make arrests that would necessitate their testifying in court.

Thomas alleges that Sheriff Tragre decided to transfer Thomas and Schexnayder to the corrections department. Thomas claims that he met with Sheriff Tragre and explained that placing former narcotics officers in the corrections department was a security risk because a large number of the inmates were arrested by Thomas and Schexnayder and those inmates may have hostile feelings toward them. Thomas viewed the proposed transfer to the corrections department as a demotion because "[c]orrections officers do not have the same privileges and responsibilities as officers assigned to narcotics." Thomas resigned. Schexnayder accepted an assignment providing

3

security at the courthouse. Bordelon was not reassigned and remained a narcotics officer until his employment with the SJBPSO ended in May 2015.

In August 2015, Thomas filed a Charge of Discrimination against Sheriff Tragre with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination, disparate treatment and constructive discharge stemming from Sheriff Tragre's decision to transfer Thomas to the corrections department. The EEOC issued a Right to Sue letter to Thomas on April 19, 2016.

Meanwhile, Randle sued Sheriff Tragre, Thomas, Schexnayder, Chappel, Bordelon, and other SJBPSO deputies in the United States District Court for the Eastern District of Louisiana alleging, among other things, that they violated his right guaranteed by the Fourth Amendment to the Constitution of the United States to be free from the use of excessive force. Randle's claims against Thomas and Schexnayder were tried before a jury in December 2015. The jury found that neither Thomas nor Schexnayder violated Randle's constitutional rights by subjecting him to excessive force that "was the cause-in-fact and the proximate cause of the injury for which [Randle] sought to recover." The jury declined to find that Thomas or Schexnayder "committed an assault and/or battery on [Randle] and that such assault and/or battery was the cause-in-fact and the proximate cause of the injury for which [Randle sought] to recover." Sometime after the trial Sheriff Tragre promoted Schexnayder to the rank he held prior to being moved to the courthouse, assigned him to central investigations and gave him back pay and benefits from the date that he was moved to the courthouse.

Thomas alleges that he twice "reached out" to Sheriff Tragre to ask about reinstatement with back pay and benefits, but Sheriff Tragre has not responded. Thomas filed another Charge of Discrimination with the EEOC against Sheriff Tragre this time alleging retaliation for Sheriff

4

Tragre's refusing to rehire Thomas after he filed his initial EEOC complaint. The EEOC issued a Right to Sue letter to Thomas on February 6, 2017.

On July 11, 2016, Thomas filed the instant suit against Sheriff Tragre alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Thomas and Sheriff Tragre have filed cross motions for summary judgment arguing that the undisputed facts in the record support judgment in their own favor.

## ANALYSIS

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). In determining whether there is a dispute as to a material fact, the court considers all of the evidence in the record and draws all reasonable inferences in favor of the nonmoving party, but does not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 120 S.Ct. 2097, 2110 (2000).

### II. Title VII

Title VII provides that it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff bringing claims under Title VII can use either direct or circumstantial evidence to prove his case of intentional discrimination. Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994). Direct evidence is "evidence which, if believed proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973)." Id.

In McDonnell Douglas, the Supreme Court of the United States "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2746 (1993). First, the plaintiff must establish a prima facie case of discrimination, which creates a presumption that the employer unlawfully discriminated against the employee. Tex. Dep't of Cmty. Affairs v. Burdine, 101 S.Ct. 1089, 1094 (1981). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. Buisson v. Bd. of Supervisors of the La. Cmty. and Technical Coll. Sys., 592 Fed. Appx. 237, 243 (5th Cir. 2014) (citing McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007)). "If the employer articulates a legitimate reason for the adverse employment action, 'the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose.'" Id. (quoting McCoy, 492 F.3d at 556).

### A. Plaintiff's Race Discrimination and Disparate Treatment Claim

#### 1. Plaintiff's *Prima Facie* Case

To establish a prima facie case of discrimination the plaintiff must demonstrate that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) suffered an adverse employment action, such as termination of his employment; and, (4) was replaced with someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. Id. (citing McCoy, 492 F.3d at 556).

#### I. Member of a Protected Group and Qualified for the Position at Issue

Thomas satisfies the first two prongs. As an African American, Thomas has demonstrated that he was a member of a protected group. There is no dispute that he was qualified for his position at the SJBPSO.

#### ii. Suffered an Adverse Employment Action

As to the third prong, Thomas alleges that he suffered an adverse employment action in that Sheriff Tragre was going to transfer him to corrections, which Thomas viewed as a demotion and safety risk. Thomas argues that this demotion constituted a constructive discharge because it forced him to resign.

"A transfer can qualify as an adverse employment action when it is the equivalent of a demotion." Stringer v. N. Bolivar Consol. Sch. Dist., - - - Fed. Appx. - - -, 2018 WL 1192999, at *3 (5th Cir. 3/7/2018) (citing Alvarado v. Tex. Rangers, 492 F.3d 605, 612 (5th Cir. 2007)). "A transfer need not result in a decrease in pay, title or grade" to constitute a demotion. Alvarado, 492 F.3d at 613. A transfer is considered a demotion "when 'the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement.'"

Id. "However, where the evidence merely shows 'that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action.'" Stringer, 2018 WL 1192999, at *3 (quoting Pegram v. Honeywell, Inc., 361 F.3d 272, 283 (5th Cir. 2004)). Determining whether the new position is worse is an objective inquiry focusing on the qualities of the new position, not the employee's subjective preference for one position over another. Alvarado, 492 F.3d at 613-14 (citations omitted).

In Click v. Copeland, 970 F.2d 106 (5th Cir. 1992), the United States Court of Appeals for the Fifth Circuit held that the transfer of two sheriff's deputies from law enforcement positions to jail guards can be considered a demotion, even without a reduction in pay. The evidence in Click showed that: "(1) the jail guard positions were less interesting and less prestigious than the law enforcement positions; (2) 'everybody' viewed a transfer from detention to law enforcement as a promotion and such transfers were rarely appealed, unlike transfers from law enforcement to detention, which few people requested and which were often appealed; and (3) there was a general preference for law enforcement positions, as 'all' jail guards would like to be doing law enforcement work." Id. at 109.

In addition to a demotion, Thomas also argues that the proposed transfer to corrections resulted in a constructive discharge. "A constructive discharge occurs when 'the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" Stringer, 2018 WL 1192999, at *6 (quoting Keelan v. Majesco Software, Inc., 407 F.3d 332, 342 (5th Cir. 2005)). Whether an employee would feel compelled to resign is a case and fact specific inquiry applying a "reasonable employee" test, which asks "whether

a reasonable person in the plaintiff's shoes would have felt compelled to resign" considering the following relevant factors, either singly or in combination:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

Keelan, 407 F.3d at 342 (quoting Haley v. Alliance Compressor LLC, 391 F.3d 644, 649-50 (5th Cir. 2004)). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001). Constructive discharge is supported by aggravating factors such as "hostile working conditions or the employer's invidious intent to create or perpetuate the intolerable conditions compelling resignation." Keelan, 407 F.3d at 342 (citing Jurgens v. EEOC, 903 F.2d 386, 393 n. 10 (5th Cir. 2004)). The plaintiff bears the burden of proving constructive discharge. Id. (citing Haley, 391 F.3d at 650).

Thomas has alleged that he was demoted from a position in law enforcement to one in corrections and that this resulted in a constructive discharge. Sheriff Tragre testified at his deposition that corrections officers and courtroom security officers do not have the same duties and responsibilities as narcotics officers, or face the same type of risks and dangers. Thus, the pay is less. Schexnayder testified at his deposition that his pay was reduced by $2.00 per hour and he was no longer allowed to use a police vehicle when he was transferred to court security. Further, Destor testified at his deposition that corrections is less prestigious and has fewer responsibilities than working in narcotics. Specifically, narcotics agents meet with judges to obtain warrants and testify

9

in court, whereas a corrections officer's only responsibility is to watch the prisoners. These facts demonstrate that Thomas was subjected to a demotion, that would have resulted in a reduction in salary and job responsibilities. Thus, Thomas has satisfied the third prong of a *prima facie* case of race discrimination, namely he that suffered an adverse employment decision.

### iii. Treated Less Favorably than Other Similarly Situated Employees Outside the Protected Group or Replaced with Someone Outside His Protected Group

Thomas has not satisfied the fourth prong of establishing a *prima facie* case of race discrimination by showing that he was treated less favorably than other similarly situated employees outside the protected group or that he was replaced with someone outside his protected group. Thomas alleges that he was treated less favorably than Bordelon because Thomas was subjected to the proposed demotion, whereas Bordelon, who was also implicated in the Randle incident, was not. Although Thomas and Bordelon received different treatment in 2015, a year after the internal affairs report on the Randle incident was issued, they were not similarly situated at that time.

Sheriff Tragre testified that Thomas and Schexnayder's proposed transfers in 2015 were not based on not the underlying facts concerning Randle's arrest and the alleged use of excessive force. Instead, the proposed transfers were based on a meeting Sheriff Tragre had with the District Attorney regarding the potential impact of the contents of the internal investigation report on criminal prosecutions in which Thomas and Schexnayder were involved. The District Attorney informed Sheriff Tragre that criminal defense attorneys would seek the internal affairs report, which stated that Thomas and Schexnayder were untruthful, and would try to use it to undermine Thomas's and Schexnayder's credibility. The District Attorney had instructed her prosecutors to file motions *in limine* to exclude such evidence. Sheriff Tragre thought that this was a problem and sought to put

Thomas and Schexnayder in positions where they would be less likely to make arrests and have to testify in court. The internal affairs report exonerates Bordelon. Indeed, it states that Bordelon was truthful and that Thomas and Schexnayder should be "severely reprimanded" or terminated because "[t]heir credibility has been destroyed for future court cases." Thus, there was no need for Sheriff Tragre to remove Bordelon from the narcotics unit on the same basis that he reassigned Thomas and Schexnayder. Therefore, Thomas has failed to demonstrate that he was treated less favorably than Bordelon because Bordelon was not similarly situated in terms of the contents of the internal affairs report.

Additionally, Thomas has not demonstrated that he was replaced with someone outside of the protected class. Thomas contends that he was eventually replaced by white officers in the narcotics unit when Sheriff Tragre assigned or promoted seven white officers to that unit in 2016. However, Thomas does not argue, nor does he present evidence to support the premise that Sheriff Tragre's supposed intention to hire white officers was the driving force behind his proposed transfer to corrections. There is no evidence that Sheriff Tragre proposed transferring Thomas to the corrections department in order to replace him with white officers or that Thomas was immediately replaced with a white person after he resigned. Therefore, Thomas has not met his burden of proving that he was treated less favorably than other similarly situated employees outside the protected group or that he was replaced with someone outside his protected group.

Because Thomas has failed to establish a *prima facie* case of race discrimination and disparate treatment under Title VII, Sheriff Tragre's motion for summary judgment is GRANTED as to that claim, which is DISMISSED WITH PREJUDICE.

**B. Plaintiff's Retaliation Claim**

Thomas alleges that he was retaliated against under Title VII for complaining about discrimination. Specifically, Thomas alleges that Sheriff Tragre failed to re-hire him in retaliation for his filing a Charge of Discrimination with the EEOC.

Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he participated in a protected activity; (2) he suffered an adverse employment action; and, (3) there is a causal connection between the protected activity and the adverse action. Buisson, 592 Fed. Appx. at 246 (citing Stewart v. Miss. Trans. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009)).

Thomas claims that Sheriff Tragre has refused to re-hire him in retaliation for his complaining about racial discrimination. However, Thomas cannot establish a casual connection between the complaints and the alleged adverse employment action. Thomas as never formally re-applied for employment at the SJBPSO. Thus, Sheriff Tragre has not had the opportunity to re-hire Thomas in the formal course of business. Further, there is no evidence that Sheriff Tragre would refuse to re-hire Thomas in retaliation for his filing an EEOC complaint. Indeed, Sheriff Tragre re-hired another officer who filed an EEOC complaint against him and then re-applied for employment. Rather than formally apply for employment at the SJBPSO, Thomas verbally asked about reinstatement and has inquired through this lawsuit about being re-hired by Sheriff Tragre. Thomas's attorney sent a settlement demand letter to Sheriff Tragre's attorney seeking reinstatement

of Thomas' employment at a specific rank, with a specific assignment, and a certain amount of back pay as consideration for settling this matter. Sheriff Tragre's refusal to settle the lawsuit on terms dictated by Thomas does not support a claim that Sheriff Tragre failed to re-hire Thomas in retaliation for Thomas's complaining about race discrimination. Therefore, Sheriff Tragre's motion for summary judgment is GRANTED as to Thomas's retaliation claim brought under Title VII, which is DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion *In Limine* asking the court to take judicial notice of the jury verdict in Randle v. Tragre, C/A No. 15-395, in the United States District Court for the Eastern District of Louisiana (Doc. #59) is **GRANTED** as unopposed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion *In Limine* asking the court to take judicial notice of motions *in limine* filed by the District Attorney in certain criminal actions in the 40th Judicial District Court, Parish of St. John the Baptist, State of Louisiana (Doc. #62) is **GRANTED** as unopposed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Rule 56(c) Objection (Doc. #68) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #60) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #61) is **GRANTED**, and plaintiff's claims against the defendant are **DISMISSED**.

New Orleans, Louisiana, this  12th  day of April, 2018.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**